UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY CLIFFORD GATES, JR.,

                Petitioner,

v.

CONNIE HORTON,

                Respondent.

_____/

Case No. 2:20-cv-29

Honorable Paul L. Maloney

**<u>OPINION</u>**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Anthony Clifford Gates, Jr. is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

On March 1, 2016, in Calhoun County Circuit Court Case No. 16-000002-FH, Petitioner pleaded *nolo contendere* to second-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(3), and resisting and obstructing a police officer, in violation of Mich. Comp. Laws § 750.81d(1). On March 28, 2016, the court sentenced Petitioner to concurrent prison terms of 8 years, 11 months to 22 years, 6 months for home invasion and 2 to 3 years for resisting and obstructing a police officer. Those sentences were to be served consecutively to a sentence of 1 year, 6 months to 5 years for third-degree home invasion, a sentence for which Petitioner was on parole at the time he committed the offenses prosecuted in Case No. 16-000002-FH.

Also on March 1, 2016, in Calhoun County Circuit Court Case No. 16-000222-FH, Petitioner pleaded *nolo contendere* to first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2), felon in possession of a firearm, in violation of Mich. Comp. Laws

§ 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On March 28, 2016, the court sentenced Petitioner to 15 years, 1 month to 30 years for home invasion, to be served concurrently to a consecutive string of 2 years for felony-firearm and 2 years, 4 months to 7 years, 6 months for felon in possession of a firearm.  The sentences imposed in Case No. 16-000222-FH were to be served concurrently with the sentences imposed in Case No. 16-000002-FH, but consecutively to Petitioner's previous sentence for third-degree home invasion.

On February 26, 2020, Petitioner filed his habeas corpus petition raising one ground for relief:

> I.   The trial court erred by denying [Petitioner's] plea-withdrawal motion without even considering his claim that trial counsel provided ineffective assistance or his claim that the judge's advice regarding the maximum sentence was inadequate.
>
> A.   [Petitioner] made out a claim that his appointed trial lawyer provided ineffective assistance by advising him he faced a life sentence if convicted after trial, but that a no-contest plea would limit imprisonment to seven years.
>
> B.   The trial court failed to properly advise Mr. Gates of the "maximum possible prison sentence" he faced.

(Pet., ECF No. 1, PageID.5-6.)

## Discussion

## I.   Factual allegations

In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea.  Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*.  Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea

2

of guilty.  Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).   Petitioner's *nolo contendere* plea, therefore, abandoned any challenge he might have to the state's ability to prove factual guilt.   Nonetheless, under state law, the trial court must still establish support for a finding that the Petitioner is guilty of the offense charged.  Mich. Ct. R. 6.302(D)(2).  In Petitioner's case, the trial court relied on the prosecutor's statement of the facts as derived from the police reports and the preliminary examination transcript:

> The facts would indicate that there was an incident or actually two incidents that occurred on or about November 25th, 2015.  With regard first to case number 16-0002, the reports and examination testimony indicate that police were called to an area about or near 17 West Minges in the city or Battle Creek, Calhoun County, Michigan.  Reports from officers indicate that a neighbor to that address had called police and had seen a pick-up truck which she identified as being a vehicle not belonging to any neighbor as far as she could tell parked in a neighboring driveway. The neighbor saw a person park that pick-up truck and exit that pick-up truck.  She identified this defendant as being that person who arrived and exited the pick-up truck and entered the home at 17 West Minges.  When police arrived one of the officers who was there was the officer identified in Count two of this Information Officer Broughton.  He and another officer at 17 West Minges approached the house, they found that there had been a window broken.  They in looking through the windows of the house saw an individual inside the home.  Officers at preliminary examination testified that they were able to identify that individual as being this defendant, Mr. Gates.  Officers indicated that they were in uniform, full police uniform, identified themselves as police officers and instructed the defendant to come out of the home.  Officers testified that upon hearing those instructions the defendant retreated into the home running away from the officers.  Additional personnel--police personnel were called and eventually a canine unit was called in and entered that home.  And the defendant was located within that home which was a dwelling house hiding somewhere within the home.  After police entered the home as well, they found the various items of property including guns and other items had been moved apparently in an attempt to gather those items up from what the testimony indicated to be taken out of the home.  Additionally, the defendant was not given permission nor was anyone who was not a resident of that household given permission to enter that household.
>
> With regard to case number 16-0222, this incident occurred again on or about the same date, November 25th, 2015, in the city of Battle Creek, Calhoun County, Michigan.  According to the reports and testimony, apparently this incident in this

matter which occurred 649 Minges Road was just prior to the incident just described to the Court.  649 Minges Road according to witnesses and testimony is a dwelling house where David and Michelle Kelley lived.  They were sleeping over the night over 11-25-2015, awoke to find that someone had entered their home without permission through a closed garage door.  Upon waking up those residents found several items of property missing from the home including several long guns, some cash, a knife, and perhaps some other property as well.  Officer was taking their report when additional information came to that officer that there was another home invasion near this location, that would be the one just described at 17 West Minges.  In further investigation of the 649 Minges home invasion, officers discovered the pick-up truck located near 17 West Minges which the defendant was identified to have been in and driving and in possession of.  In the back of that pick-up truck items of property were found including a bag of long guns.  Those long guns were identified by the residents of 649 Minges as having been in their home that night and as having been their property which was taken from the home earlier or sometime over the course of that night.  Again, if not indicated before, those residents gave no one permission to enter or take any property from their home.

(Plea Tr., ECF No. 10-4, PageID.171-174.)  Petitioner's counsel and the prosecutor agreed that those facts provided a sufficient foundation for Petitioner's plea.  (*Id*., PageID.174-175.)  The court concurred.  (*Id*.)

Before reviewing the factual foundation, the court reviewed the terms of the plea agreement, the charges, and the maximum penalties that Petitioner faced.  In explaining the penalties, the court provided the statutory maximums for each offense and then noted that Petitioner's maximum, as a second habitual offender, would be one and one-half times the statutory maximum.  Petitioner acknowledged that the court had accurately described the agreement and that he understood the charges and the maximum penalties.  (*Id*., PageID.167, 170.) Petitioner also acknowledged that no one had threatened or coerced him or promised him anything other than that which was provided by the terms of the agreement as stated by the court.  (*Id*., PageID.171.)  Petitioner's counsel and the prosecutor likewise stated that they were not aware of any promises, threats, or inducements other than those provided in the plea agreement as stated by the court.  (*Id*., PageID.175.)  The court found that Petitioner's plea was knowingly, voluntarily, and accurately given.  (*Id*.)

After Petitioner entered his plea, but before sentencing, he had a change of heart. At sentencing, he explained to the court that he wished to withdraw his plea because he had not committed the crimes charged.  (Sentencing Tr., ECF No. 10-5, PageID.188.)  The court concluded that the plea proceedings were proper and that Petitioner had failed to provide a basis for plea withdrawal.  (*Id.*, PageID.189.)  The court denied Petitioner's motion and sentenced Petitioner as set forth above.

Petitioner asked for and was appointed appellate counsel.  Appellate counsel moved to withdraw the plea for several reasons:  first, the court never "accepted the plea"; second, the plea was not knowing and voluntary because Petitioner was heavily medicated at the time; third, the plea was not knowing and voluntary because Petitioner did not under the consequences of his plea in that counsel promised him he would not be sentenced to more than 7 years and Petitioner was not able to multiply numbers such that he did not understand that the maximum penalty for home invasion, enhanced by his second habitual offender status, would by 20 times one and one-half, or 30 years; fourth, that there was no valid basis for the "no contest" plea; and fifth, Petitioner could not have made an appropriate admission to the factual basis for the plea because he did not commit the crimes charged.  (Mot. Hr'g Tr., ECF No. 10-6, PageID.195-197.)

The court denied Petitioner's motion to withdraw the plea.  The court concluded it had, in fact, accepted the plea; that there was no factual support for Petitioner's claim regarding his medicated state at the plea hearing; that Petitioner had been advised of and understood the maximum penalties; and that there was an appropriate basis for a "no contest" plea.  (*Id.*, PageID.197-198.)

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, raising the same issues he raises in this habeas petition.[1]  By order entered July 3, 2018, the court of appeals denied relief "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 10-7, PageID.204.)  Petitioner then filed an application for leave to appeal to the Michigan Supreme Court.  That court denied leave by order entered December 21, 2018.  (Mich. Order, ECF No. 10-8, PageID.314.)  Petitioner then timely filed the instant petition.

By order entered March 17, 2020, Respondent filed her answer to the petition along with a motion seeking permission to file the answer because it was submitted four days late.  By order entered October 1, 2020, Magistrate Judge Maarten Vermaat granted that relief.  Petitioner has filed an appeal of that decision.  (ECF No. 14.)  Petitioner has also filed a motion for release on bond pending a decision on the merits because of the risk posed by COVID-19 in the correctional facility where he is housed.  (ECF No. 13.)  Petitioner has filed a motion to appoint counsel as well.  (ECF No. 15.)  Finally, Petitioner filed his response to Respondent's answer.  (ECF No. 17.)

Petitioner's appeal and motions, and the merits of his petition, are addressed below.

## II.    Motion for release on bond

In *Dotson v. Clark*, 900 F.2d 77 (6th Cir. 1990), the Court of Appeals recognized that, in limited circumstances, a district court may grant bond pending a decision on the merits of a habeas corpus petition.  The *Dotson* court indicated, however, that the power to release petitioner on bond must be exercised sparingly and only in the presence of exceptional circumstances. *Dotson*, 900 F.2d at 79; *see also Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993).  Under *Dotson*,

---

[1] Petitioner also raised an issue regarding the way the consecutive nature of his sentences was described in the judgment for Case No. 16-000222.  The court of appeals granted relief on that point.  (Mich. Ct. App. Order, ECF No. 10-7, PageID.204.)

the prisoner seeking release on bond "must be able to show not only a substantial claim of law based on the facts surrounding the petition but also the existence of some 'circumstance making the [motion for bail] exceptional and deserving of special treatment in the interests of justice.'" *Dotson*, 900 F.2d at 79 (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (Douglas, J., in chambers)). The habeas petitioner, who is incarcerated under a presumptively valid criminal conviction, is on a much weaker footing than a pretrial accused or even a convicted defendant waiting appeal.  *See Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978).

> **A.**   **Release based on the strength of Petitioner's habeas petition claims**

Applying the two-prong test in *Dotson*, this Court finds neither a substantial claim on the merits of the petition nor exceptional circumstances deserving special treatment in the interest of justice.  Petitioner's motion is perfunctory and states no substantial basis for the extraordinary relief he seeks.  His challenges have been reviewed and rejected in the state appellate courts, and Petitioner has not clearly demonstrated that the state courts' disposition of his claims was contrary to federal law or was an unreasonable determination of the law or facts.  28 U.S.C. § 2254(d).  Based on his habeas petition claims, Petitioner has provided no basis that warrants release prior to review of the state record.

> **B.**   **Release based on Petitioner's independent claims of unconstitutional incarceration because of the COVID-19 risk**

Petitioner's claims regarding the constitutionality of his custody in the prison because of risks posed by COVID-19 are principally claims regarding the conditions of his confinement.  Such claims should be raised by a complaint for violation of 42 U.S.C. § 1983. However, the relief Petitioner seeks—release from custody—is available only upon habeas corpus review.  "The Supreme Court has held that release from confinement—the remedy petitioner[] seek[s] here—is 'the heart of habeas corpus.'"  *Wilson*, 961 F.3d at 868 (quoting *Preiser,* 411 U.S.

at 498).[2]  A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser*, 411 U.S. at 484 (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).

Petitioner's decision to seek habeas relief for the COVID-19 risks he faces, however, circumscribes the relief available.  *Wilson*, 961 F.3d at 837.  Even if there might be conditions of confinement, short of release, that would mitigate the risk—and eliminate the cruel or unusual character of the punishment—it is not within this Court's habeas jurisdiction to grant such relief.  *Id*.  A claim seeking relief other than release is properly brought under 42 U.S.C. § 1983.

By raising the COVID-19 risk as an independent basis for challenging the constitutionality of Petitioner's continued incarceration, he must also comply with all of the requirements for habeas relief.  Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275-77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v.*

---

[2] The *Wilson* petitioners were federal prison inmates who brought habeas claims under 28 U.S.C. § 2241 similar to the claims brought by Petitioner.

8

*Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen v. Perini*, 424 F.2d 134, 138-39 (6th Cir. 1970).

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner has neither alleged that he exhausted his COVID-19 habeas claims in the state courts nor has he provided any documentation indicating that he has pursued any such state remedies.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  The Court concludes that Petitioner has at least one available procedure by which to raise the issues he has presented in this application, he may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*  Additionally, relief may be available to Petitioner by way of a habeas corpus petition in state court in that he seeks a determination "whether his continued custody is legal." *Phillips v. Warden, State Prison of S. Mich.*, 396 N.W.2d 482, 486 (Mich. Ct. App. 1986).  Alternatively, Petitioner may seek relief, even release, by civil action in state court for unconstitutional conditions of confinement.  *See Kent Cnty. Prosecutor v. Kent Cnty. Sheriff*, 409 N.W.2d 202, 208 (Mich. 1987) ("No one now doubts the authority of courts to order the release of prisoners confined under conditions violating their Eighth and Fourteenth Amendment rights.").  Therefore, the Court concludes that he has at least one available state remedy.

To properly exhaust his claim, Petitioner must present his claim to each level of the state court system.  *O'Sullivan,* 526 U.S. at 845; *Hafley,* 902 F.2d at 483 ("'[P]etitioner cannot be deemed to have exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as

to any issue, unless he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme Court.'") (citation omitted).  Until Petitioner has exhausted his COVID-19 unconstitutional confinement claims in the state courts, this Court cannot release him based on those claims.

For all these reasons, the Court will deny Petitioner's motion for release on bond.

## III.    Motion to appoint counsel

Indigent habeas petitioners have no constitutional right to a court-appointed attorney.  *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594-95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires.  Rule 8(c), Rules Governing Section 2254 Cases.

The Court has considered the complexity of the issues and the procedural posture of the case.  At this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Petitioner's position.  There is no need for an evidentiary hearing and the interests of justice do not require the appointment of counsel for Petitioner.  Petitioner's motion for a court-appointed attorney will therefore be denied.

## IV.    Appeal of the order allowing Respondent's answer to be filed

Petitioner argues that the Court's order to answer (ECF No. 6) specifically provided that no extensions of the time to answer would be granted.  Magistrate Judge Vermaat's order allowing Respondent's late answer, Petitioner argues, violates the "no extension" order.  Petitioner claims further that the Court should consider Respondent's defenses waived because of its failure to timely answer the petition.

Federal Rule of Civil Procedure 54 provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised

at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  Magistrate Judge Vermaat was free to reconsider his order that precluded extensions of the time to answer the petition and to extend the time to answer the petition under that rule.  Petitioner offers no basis to conclude that Magistrate Judge Vermaat did not have the authority to extend the time to answer by four days.

Moreover, Petitioner's suggestion that Respondent has waived defenses or that Petitioner is otherwise relieved of proving his claims because of a late answer is simply wrong.  In *Allen v. Perini*, 424 F.2d 134 (6th Cir. 1970), the Sixth Circuit Court of Appeals considered the applicability to habeas proceedings of the procedural rules upon which Petitioner relies:

> The burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner.  *Jones v. Russell*, 396 F.2d 797 (6th Cir.); *Gray v. Johnson*, 354 F.2d 986 (6th Cir.).  The failure of State officials to file a timely return does not relieve the prisoner of his burden of proof.  Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings.  We conclude that the failure of the Office of the Attorney General of Ohio to file a timely return does not afford a basis for *instanter* relief. Despite the delinquency of the State, the District Court was obligated to decide the case on its merits.  *McGuffey v. Turner*, 267 F. Supp. 136 (D. Utah); *cf. Taylor v. United States*, 282 F.2d 16, 23-24 (8th Cir.).  We conclude that in spite of the untimeliness of the State's return, the District Court would have no power to grant the writ of habeas corpus in the absence of an evidentiary hearing and unless and until the averments of the petition have been proved by competent evidence.

> Allen relies upon Rule 55(a), Fed. R. Civ. P. in support of his claim for default judgment.  Rule 81(a)(2), Fed. R. Civ. P. provides for only limited application of these rules to habeas corpus proceedings.  We hold that Rule 55(a) has no application in habeas corpus cases and that the return to a petition for habeas corpus is not an answer within the meaning of Rule 12.

*Allen*, 424 F.2d at 138.  Accordingly, Petitioner's appeal of the order extending the time for Respondent to answer the petition is denied and Magistrate Judge Vermaat's order granting the extension is affirmed.

## V.      AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court

adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## VI.    Discussion

### A.  Challenging multiple judgments in one habeas petition

As noted above, Petitioner challenges two separate judgments of sentence in one habeas petition.  The Sixth Circuit Court of Appeals recently considered the propriety of that practice:

> The Rules Governing § 2254 Cases . . . provide[] that "[a] petitioner who seeks relief from judgments of more than one state court must file a separate petition covering the judgment or judgments of each court."  The rule's reference to "a separate petition covering the . . . *judgments* of each court" implies that a petitioner *may* challenge multiple judgments from a single court in a single petition.

*In re Caldwell*, 917 F.3d 891, 893 (6th Cir. 2019) (emphasis in original).  Therefore, the habeas rules do not bar Petitioner from challenging both judgments from the Calhoun County Circuit Court in this proceeding.

### B.    Withdrawal of the pleas

As a preliminary matter, Petitioner presents his claims regarding the validity of his pleas under the umbrella of an assertion that the trial court erred by not permitting him to withdraw the plea.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether the trial court erred under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  As fully set forth below, the only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not

entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

### C.      Constitutional challenges to the pleas

It has long been the case that a valid guilty plea (or *nolo contendere* plea) bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267.  A plea not voluntarily and intelligently made has been obtained in violation of due process and is void.  *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Petitioner's claim does not challenge the power of the state to bring him into court.  Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into.  *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady*

*v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists.  *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493

16

("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.  *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner touched upon several of these "plea validity" issues in his motion to withdraw plea in the trial court.  He has narrowed it down to two such issues in his habeas petition: first, Petitioner's plea was invalid because his counsel rendered ineffective assistance by advising Petitioner that he faced the possibility of life imprisonment if he did not accept the plea agreement but instead went to trial ***and*** that Petitioner would only get a 7-year sentence if he entered a plea; and second, Petitioner did not understand the consequences of his plea because he was not able to multiply numbers such that he did not understand, for example, that his maximum sentence exposure for first-degree home invasion was 30 years.

### 1.      Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Petitioner claims:

[M]y attorney told me that even though I maintained my innocence on Home Invasion-1st Degree, I should plead to it because if I went to trial they would find me guilty anyway and I would face life in prison.  He told me I would only face seven years if I pled guilty.

18

(Aff. of Anthony Gates Jr., ECF No. 10-7, PageID.296.)  Petitioner's appellate counsel mentioned that issue in the motion to withdraw plea (Mot., ECF No. 10-7, PageID.290-291); however, he did not argue it at the hearing (Mot. Hr'g Tr., ECF No. 10-6).   The trial court's resolution of Petitioner's motion to withdraw plea did not directly address Petitioner's claim as an ineffective-assistance-of-counsel claim.   But the trial court did specifically conclude that the plea was knowingly and voluntarily made and that there was no basis to withdraw it.  (*Id.*, PageID.200.)

There is no basis under state law to advise Petitioner that his maximum sentence exposure for first-degree home invasion would be 7 years.  If counsel so advised Petitioner, there would be a strong argument that counsel's advice was objectively unreasonable.  Similarly, there is no basis under state law to advise Petitioner that his maximum sentence exposure would be life imprisonment.  If counsel so advised Petitioner, there would be a strong argument that counsel's advice was objectively unreasonable.

Petitioner's allegations regarding counsel's advice, however, are contradicted in the record.   After reviewing all of the terms of the plea agreement, the court specifically asked Petitioner if anybody had threatened or coerced him or promised him anything beyond the terms of the plea agreement.   Petitioner responded "No."  (Plea Tr., ECF No. 10-4, PageID.171.)   Yet Petitioner's claims now depend on a threat—potential life imprisonment absent a plea—and a promise—a maximum 7-year sentence for first-degree home invasion.

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials

19

from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that, where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90.

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. Holding Petitioner to his sworn responses at the plea hearing, the record does not support the claim that counsel advised Petitioner that he faced life imprisonment absent a plea or a maximum of 7-years' imprisonment for first-degree home invasion if he entered a plea.

Moreover, even if counsel advised Petitioner as he now contends and Petitioner went into the plea hearing with the subjective misunderstanding that his plea was necessary because of the "stick" of life imprisonment for first-degree home invasion or the "carrot" of a maximum 7-year sentence for home invasion, the plea colloquy disabused him of that notion. *See, e.g., United States v. Horne*, 313 F. App'x 788, 793 (6th Cir. 2008) ("Any mistaken belief Horne

20

may have harbored as a result of misleading information from his counsel at the time of entering the plea was remedied at the plea colloquy.  During the plea colloquy, the district court clearly informed Horne of the conditions and consequences of his plea."); *United States v. Contreras-Armendariz*, 207 F. App'x 594, 596-97 (6th Cir. 2006) (where the court "reviewed the rights that Contreras was waiving, the factual and legal nature of the offenses with which he was charged, and the potential sentences he faced as a result of the guilty plea," the plea was knowing and voluntary despite Contreras' mistaken belief his criminal history category was lower than it was ultimately determined to be); *Adkins v. Lafler*, No. 4:06-CV-11562, 2006 WL 3759921 at *4 (E.D. Mich. Dec. 20, 2006) (concluding  that Petitioner's erroneous assumptions and mistaken beliefs were "insufficient to overcome the presumption of verity which attaches to Petitioner's statements during the plea colloquy . . . .").

Petitioner cannot legitimately claim he would not have entered his plea if he had only known the maximum sentence he faced was less than life if he did not enter his plea or more than 7 years if he did, because the court specifically told Petitioner the maximum sentence he faced was 30 years (or 20 years times one and one half) and he entered his plea anyway.  Thus, even if the record supported Petitioner's claim regarding counsel's bad advice, Petitioner cannot show it made a difference to his plea.  Because Petitioner cannot show he was prejudiced by counsel's purported misadvice, he cannot prevail on his ineffective assistance of counsel claim.

Stated differently, Petitioner has not shown that the state court's rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, clearly established federal law.  Nor can Plaintiff show that the factual determinations that the state court relied upon to conclude that Petitioner's claims lacked merit are unreasonable on this record.  Therefore, Petition is not entitled to habeas relief on this claim.

### D.   Petitioner's understanding of the maximum sentences

Petitioner next contends that he did not understand the maximum sentences associated with the crimes for which he entered a *nolo contendere* plea.  When describing the maximum sentences, the court recited the statutory maximums and, after stating all of those maximums, advised Petitioner that those maximums would be multiplied by one and one-half because of the habitual offender enhancement.  Petitioner indicated that he understood the nature of the charges and the maximum potential penalties.  (Plea Tr., ECF No. 10-4, PageID.170.)

Critically, Petitioner does not contradict that assertion in his petition or supporting materials.  His affidavit avers:

> I have not regularly attended school since the sixth grade.  I have started to work on my GED since I have been in prison, but I have a long way to go.  My teachers tell me I am at about a third grade reading and math level.  When I started classes, I could not even multiply and divide.

(Affid. of Petitioner, ECF No. 10-7, PageID.297-298.)  Appellate counsel seized on that admission to conclude that Petitioner could not have understood the maximum penalties because that required multiplication—the statutory maximum times one and one-half.  Petitioner, however, never states that he could not "do the math" with regard to his maximum sentences or that he otherwise did not understand exactly what his maximum sentences were.  Petitioner cagily argues:

> The judge told petitioner that his maximum penalty for each offense was one and one[-]half times.[]   This presented petitioner with a "math problem" without determining whether petitioner was capable of solving it.  As the record has clearly indicated; petitioner functions on a 3rd grade math level, as supported by factual documentation contained in petitioner[']s MDOC inmate file.

(Pet'r's Mem. of Law, ECF No. 1-1, PageID.33.)[3]  Petitioner never states that he did not know the actual maximum penalties for his crimes; nor does Petitioner state that if he had known the maximum penalties for his crimes he would not have entered the *nolo contendere* pleas.

The trial court determined that Petitioner understood the maximum penalties and knowingly and voluntarily entered his pleas.  That determination is amply supported by Petitioner's sworn testimony at the hearing.  It is presumed correct and Petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

Petitioner does not offer clear and convincing evidence to rebut that presumption.  Instead, he offers the mere suggestion that he could not do multiplication.  Petitioner has failed to demonstrate that the state court's conclusion that his plea was knowingly and voluntarily made is contrary to, or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to habeas relief on this claim.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

---

[3] Petitioner complains that the trial judge did not "mention petitioner's assertion that he did not understand what it meant to be facing one and one half times twenty years imprisonment."  (Pet'r's Memo. of Law, ECF No. 1-1, PageID.33.)  But, Petitioner never made that assertion, in his affidavit or at any hearing.  Petitioner's appellate counsel obliquely made that assertion in the brief:

> If the Court expected the Defendant to do the math problem, it should have inquired whether Defendant was capable of doing it.  In this case, at a third grade Math level, is not capable of doing the problem.

(Pet'r's Br. in Supp. of Mot. to Withdraw Plea, ECF No. 10-7, PageID.291-292.)

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   <u>October 30, 2020</u>           <u>/s/ Paul L. Maloney</u>
                                          Paul L. Maloney
                                          United States District Judge